IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

THE MEDICAL CENTER, INC.,          *

    Plaintiff,                     *

vs.                                *

                                     CASE NO. 4:10-CV-124 (CDL)

HUMANA   MILITARY   HEALTHCARE *
SERVICES, INC., and
PGBA, LLC,                         *

    Defendants.                    *

_____

O R D E R

After making erroneous overpayments for medical claims to Plaintiff The Medical Center, Inc. ("Medical Center"), Defendants Humana Military Healthcare Services, Inc. ("HMHS") and PGBA, LLC ("PGBA") (collectively, "Defendants") offset the amounts of the overpayments against future claim payments owed to Medical Center.  Medical Center contends that these offsets were not authorized and alleges state law claims against Defendants based upon breach of contract, conversion, tortious interference with contractual and business relationships, and the voluntary payment doctrine.  Jurisdiction is based upon diversity of citizenship.  Presently pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 24).  For the reasons explained below, Defendants' motion is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL AND PROCEDURAL BACKGROUND

Although Medical Center filed a response to Defendants' Statement of Material Facts as to Which There Is No Genuine Issue for Trial ("SMF"), Medical Center's response did not include specific citations to the record to controvert the facts contained in Defendants' SMF.  *See generally* Pl.'s Resp. to Defs.' Statement of Material Facts as to Which There Is No Genuine Issue for Trial, ECF No. 28 [hereinafter Pl.'s Resp. to Defs.' SMF].  Accordingly, Medical Center failed to comply with Local Rule 56, and the facts contained in Defendants' SMF are deemed admitted.  *See* M.D. Ga. R. 56 ("All material facts

contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted").

Medical Center did submit an affidavit with its response to Defendants' Motion for Summary Judgment, Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. A, Brumbeloe Aff., ECF No. 27-1, but Medical Center did not cite to the affidavit in the response to Defendants' SMF, *see generally* Pl.'s Resp. to Defs.' SMF. Thus, the affidavit is not properly considered by the Court. *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) ("The proper course in applying Local Rule [56] at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement.").

The facts contained in Defendants' SMF, viewed in the light most favorable to Medical Center, are as follows.

**I.   The Hospital Agreement**

HMHS is a managed care support contractor for the United States Department of Defense's TRICARE program, formerly known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"). Defs.' Mot. for Summ. J. Ex. 1, Biefeld Aff. ¶ 2, ECF No. 24-3. PGBA is a subcontractor for HMHS and

provides administrative services on behalf of HMHS, including claims administration services under TRICARE. *Id.* ¶ 3. HMHS and Medical Center entered into an agreement ("Hospital Agreement") for Medical Center to provide health care services to members of the TRICARE program. *See generally* Defs.' Mot. for Summ. J. Ex. 2, Hospital Agreement, ECF No. 26-1 [hereinafter Hospital Agreement]. The Hospital Agreement applies to services provided by Medical Center to all persons designated by HMHS to be eligible members, including active duty military personnel ("Beneficiaries"), to receive benefits under an agreement between HMHS and TRICARE Management Activity. *Id.* ¶ 1. Under the Hospital Agreement, Medical Center is a "Participating Hospital" of HMHS and subject to the terms and conditions of the Hospital Agreement. *Id.* ¶ 2. Medical Center agreed to provide health care services for Beneficiaries in accordance with TRICARE regulations, policies and procedures ("Covered Services"). *Id.* Medical Center also "agree[d] to abide by all quality assurance, utilization management, grievance, appeals and other policies and procedures established and revised by HMHS and/or TRICARE from time to time." *Id.* ¶ 4. Specifically, the Hospital Agreement sets out the policies and procedures that Medical Center agreed to follow in the "HMHS Tricare Provider Handbook" ("Handbook"). *Id.;* Hospital

Agreement Attach. A, HMHS TRICARE Provider Handbook 7, ECF No. 26-1 at 8 of 15.

The Hospital Agreement contains the following provisions regarding payment procedures and rates. The Hospital Agreement specifies that HMHS must pay Medical Center in accordance with the terms set out in "Attachment B" to the Hospital Agreement, and Medical Center agreed that those payments, plus any payments owed by Beneficiaries, including but not limited to copayments, coinsurance deductibles and/or cost-share amounts, constitute payment in full for all Covered Services. Hospital Agreement ¶ 13. Attachment B provides that Medical Center "agree[d] that in no event shall payments made for medical services provided to Beneficiaries exceed one hundred percent (100%) of any CHAMPUS/TRICARE allowable" rate. Hospital Agreement Attach. B, Payment Arrangement For CHAMPUS TRICARE Program Beneficiaries 8, ECF No. 26-1 at 9 of 15.

The Hospital Agreement also "authorizes HMHS to deduct monies that may otherwise be due and payable to [Medical Center] from any outstanding monies that [Medical Center] may, for any reason, owe to HMHS." Hospital Agreement ¶ 15. The Hospital Agreement was amended effective April 11, 2007, and Medical Center again agreed to abide by the policies and procedures set out in the Handbook. Hospital Agreement, Amendment to Agreement ¶ F, ECF No. 26-1 at 13 of 15. The policies and procedures in

the Handbook request that Medical Center return any duplicate payments or overpayments made for a claim for a TRICARE Beneficiary.  Defs.' Mot. for Summ. J. Ex. 3, 2007 TRICARE Provider Handbook 83, ECF No. 24-5.  In the event that Medical Center does "not return the overpayment[s], then PGBA may, after written notice, offset the amount of double payment against future claim payments."  *Id.; accord* Defs.' Mot. for Summ. J. Ex. 4, 2009 TRICARE Provider Handbook 96, ECF No. 24-7.

The operations manual for contractors like HMHS and PGBA directs the contractors to correct all erroneously processed claims, including recouping overpayments.  Defs.' Mot. for Summ. J. Ex. 6, TRICARE Operations Manual 6010.51-M, August 1, 2002, Claims Adjustments and Recoupments Ch. 11, § 1, ¶ 5, ECF No. 24-9.  When requesting a refund for overpayments or duplicate payments, contractors must provide "[a] clear explanation of why the payment was not correct."  *Id.* at Ch. 11, § 3, ¶ 14.1.

## II.  Offset of Overpayments

As a result of an audit, HMHS and PGBA determined that overpayments in the amount of $125,959.94 had been made to Medical Center for services rendered to TRICARE members.  Biefeld Aff. ¶ 17.  PGBA wrote Medical Center advising Medical Center of the overpayments and explaining the overpayments resulted from an "[i]ncorrect application of government fee schedules for outpatient care."   Defs.' Mot. for Summ. J. Ex.

7, Letter from PGBA to Medical Center (Sept. 16, 2009), ECF No. 24-10 at 2.   The letter requested Medical Center return the overpayments to PGBA within thirty days.   *Id.* at 2-3.   PGBA notified Medical Center that PGBA was required to annotate Medical Center's records to enable PGBA to collect the erroneous payments by administrative offset if Medical Center failed to mail payment to PGBA.   *Id.* at 3.

The letter from PGBA to Medical Center also included a "Claim Detail" spreadsheet containing the following information for each overpaid claim: (1) a patient account number, (2) the "billed charges," (3) the "paid amount," (4) the "correct amount," and (5) the "refund amount."   *Id.* at 4-9.   The spreadsheet specified that overpayment occurred because each "claim was incorrectly keyed/coded which caused it to process at a higher allowable rate, which resulted in an overpayment."   *Id.* at 9.

Approximately one month later, PGBA sent Medical Center another letter regarding the overpayments and asked Medical Center to return the overpayments.   Defs.' Mot. for Summ. J. Ex. 8, Letter from PGBA to Medical Center (Oct. 16, 2009), ECF No. 24-11 at 2.   The letter included the Claim Detail spreadsheet previously provided by PGBA to Medical Center.   *Id.* at 5-10. When Medical Center did not submit the refund after sixty days, PGBA withheld $117,979.40 from the amount due on Medical

Center's current claim and applied it against the overpayments. Defs.' Mot. for Summ. J. Ex. 9, Letter from PGBA to Medical Center (Nov. 19, 2009), ECF No. 24-12 at 2. PGBA requested that Medical Center send a check for $7,980.54 to cover the remaining balance on the overpayments. *Id.* Medical Center again refused to send a refund check for the overpayments, and PGBA withheld the remaining balance of $7,980.54 due on Medical Center's current claim, resulting in full payment by Medical Center for the overpayments. Defs.' Mot. for Summ. J. Ex. 10, Letter from PGBA to Medical Center (Nov. 21, 2009), ECF No. 24-13 at 2.

## DISCUSSION

Medical Center asserts various theories of recovery under Georgia law for Defendants' alleged wrongful offset of the overpayments, including claims based upon the voluntary payment doctrine, breach of contract, conversion. Medical Center also brings a claim against PGBA for tortious interference with contractual and business relationships. Defendants seek summary judgment on all claims.[1]

---

[1] As explained below, the Court grants summary judgment on the state law grounds asserted by Defendant. Defendants also seek summary judgment on the alternative basis that Medical's Center's claims are preempted, but the Court finds it unnecessary to reach the preemption issue because Defendants are entitled to summary judgment even if Medical Center's claims are not preempted.

I.   **Medical Center's Claim Under the Voluntary Payment Doctrine**

Medical Center alleges in its Complaint that it is entitled to recover the amount offset by Defendants under the voluntary payment doctrine.   Under Georgia law, the voluntary payment doctrine provides that:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property.

O.C.G.A. § 13-1-13.   Medical Center argues that the voluntary payment doctrine makes the overpayments nonrefundable to Defendants because Defendants voluntarily made the payments to Medical Center.

Defendants respond that the voluntary payment doctrine is inapplicable because the Hospital Agreement between HMHS and Medical Center specifically authorized HMHS to offset overpayments against future payments otherwise due to Medical Center.   Medical Center acknowledges that the Hospital Agreement and the TRICARE regulations give Defendants the right to offset overpayments.   Pl.'s Mem. of Law in Supp. of Its Resp. to Defs.' Mot. for Summ. J. 10, ECF No. 29 [hereinafter Pl.'s Mem.].   The Court finds that because a contractual agreement exists between Medical Center and HMHS providing for the offset of overpayments

against future claims, the voluntary payment doctrine does not make the overpayments nonrefundable to HMHS. *See Speed Oil Co. v. Aycock*, 188 Ga. 46, 49, 2 S.E.2d 666, 667-68 (1939) (reasoning that where the plaintiff gas station attendant agreed to pay his employer an amount of money sufficient to cover the amount stolen by "bandits" and the employer agreed to reimburse the attendant if he was found not at fault, the employer could not rely on the previous version of O.C.G.A. § 13-1-13 to prevent repayment of the funds); *Lewis v. Colquitt Co.*, 71 Ga. App. 304, 30 S.E.2d 801, 806 (1944) (finding that the previous version of O.C.G.A. § 13-1-13 did not apply because there was an understanding that the deposit at issue was paid "on the condition that it was to be refunded, if it should ultimately be determined that the payment was improperly demanded."). The authority cited by Medical Center in support of its claim under the voluntary payment doctrine, *Liberty National Life Insurance Co. v. Radiotherapy of Georgia, P.C.*, 252 Ga. App. 543, 557 S.E.2d 59 (2001), is distinguishable because there was no agreement in *Liberty National Life Insurance Co.* that allowed the plaintiff to recover the overpayments. *Cf., Liberty Nat'l Life Ins. Co.*, 252 Ga. App. at 545-546, 557 S.E.2d at 61-62 (concluding the voluntary payment doctrine prevented the plaintiff from recovering the difference between the defendant's billed charges and the "reasonable and customary" amount allowed

under the insurance policies because the plaintiff voluntarily paid the defendants billed charges).   Accordingly, Defendants are entitled to summary judgment on Medical Center's claim under the voluntary payment doctrine.

## II.  **Medical Center's Breach of Contract and Conversion Claims**

Medical Center argues that Defendants breached the Hospital Agreement by failing to pay Medical Center's future claims and converted funds by wrongfully withholding the payment of claims currently due and payable to Medical Center.  "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010) (internal quotation marks omitted).  To prove a claim of conversion, Medical Center must show "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Johnson v. First Union Nat'l Bank*, 255 Ga. App. 819, 823, 567 S.E.2d 44, 48 (2002).

Medical Center's theory of recovery under either claim hinges on Medical Center's assertion that Defendants wrongfully offset the overpayments.  The undisputed evidence presented by Defendants establishes the following: (1) Medical Center agreed

11

that payment for services under the Hospital Agreement could not exceed 100% of the maximum allowable amount under CHAMPUS/TRICARE, (2) that the Hospital Agreement allowed HMHS to deduct monies that may otherwise be due to Medical Center from any outstanding monies that Medical Center owed to HMHS for any reason, and (3) that PGBA could offset the amount of overpayments against future claims.   As previously mentioned, Medical Center concedes that the Hospital Agreement allowed Defendants to offset overpayments.   Pl.'s Mem. 10.   Thus, to succeed on either the breach of contract or conversion claim, Medical Center must show it was not actually overpaid under TRICARE for the services rendered.

The Court concludes that Medical Center has failed to create a genuine fact dispute on the issue of whether HMHS actually made overpayments to Medical Center.   Defendants pointed the Court to evidence demonstrating that the overpayments resulted from an "[i]ncorrect application of government fee schedules for outpatient care,"   Letter from PGBA to Medical Center (Sept. 16, 2009), ECF No. 24-10 at 2, and that overpayments occurred because each "claim was incorrectly keyed/coded which caused it to process at a higher allowable rate," *id.* at 9.   In light of this evidence, the Court rejects Medical Center's contention that Defendants have failed to provide an adequate explanation for why each claim was

erroneously paid to Medical Center. The Court finds that Medical Center has failed to create a genuine factual dispute as to whether HMHS made overpayments to Medical Center in the amount listed for each claim. As a result, summary judgment is proper on Medical Center's breach of contract and conversion claims.

## III. Tortious Interference with Contractual and Business Relationships

Medical Center also asserts a claim for tortious interference with contractual and business relationships against PGBA. To prevail on a claim for tortious interference with contractual or business relationships, a plaintiff must show:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 556-57, 644 S.E.2d 440, 446 (2007). "In order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 609, 503 S.E.2d 278, 283 (1998). "[T]hus, all parties to an interwoven contractual agreement cannot be

13

liable for tortious interference with any of the contracts or business relationships that underlie such contractual arrangement." *J. Kinson Cook of Ga., Inc.*, 284 Ga. App. at 557, 664 S.E.2d at 446. "Where a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract." *Tidikis v. Network for Med. Commc'ns & Research, LLC*, 274 Ga. App. 807, 813, 619 S.E.2d 481, 486 (2005).

The Court finds PGBA was not a stranger to the Hospital Agreement or to the business relationship between Medical Center and HMHS under Georgia law. The undisputed evidence demonstrates that PGBA was a subcontractor to the Hospital Agreement providing administrative services to HMHS, including claims administration services under the TRICARE program. Biefeld Aff. ¶ 3. The evidence also demonstrates PGBA acted in its capacity as a subcontractor under the Hospital Agreement when it offset the overpayments. *See* Letter from PGBA to Medical Center (Nov. 19, 2009), ECF No. 24-12 (notifying Medical Center that PGBA withheld $117,979.40 from the amount due on Medical Center's current claim and applied the amount against the overpayments); Letter from PGBA to Medical Center (Nov. 21, 2009), ECF No. 24-13 at 2 (notifying Medical Center that PGBA withheld $7,980.54 from the amount due on Medical Center's

current claim and applied the amount against the overpayments).

Accordingly, Defendants are entitled to summary judgment on

Medical Center's tortious interference claim.

CONCLUSION

Based on the foregoing, Defendants' Motion for Summary

Judgment (ECF No. 24) is granted.

IT IS SO ORDERED, this 10th day of August, 2012.

S/Clay D. Land

CLAY D. LAND
UNITED STATES DISTRICT JUDGE